UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

CORDERO PASSLEY,

                           Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-20 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 19, 2017, Cordero Passley pleaded guilty to Count 64 of the Superseding Indictment in the above-captioned case. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Cordero Passley is hereby sentenced to 46 months of incarceration, 3 years of supervised release, mandatory restitution in the full amount of each victim's losses to be determined by the Court, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a seventy-five count Superseding Indictment against twenty-three defendants, including Cordero Passley ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 19, 2017, Defendant pleaded guilty to Count Sixty-Four of the Superseding Indictment, which charged Assault in Aid of Racketeering. *See* Plea Agreement ¶ 1, ECF No. 436. The Defendant also stipulated and admitted that: (i) between January 6, 2014 and January 20, 2015, he, together with others, conspired to defraud financial institutions, in violation of 18 U.S.C. § 1349 (as charged in Count Sixty-Five of the Superseding Indictment); (ii) between January 6, 2014 and July 18, 2014, he, together with others, defrauded Bank of America in violation of 18. U.S.C. § 1344 (as charged in Count Sixty-Six of the Superseding Indictment); and (iii) between January 16, 2014 and July 22, 2014, he, together with others, defrauded JPMorgan Chase, in violation of 18 U.S.C. § 1344 (as charged in Count Sixty-Seven of the Superseding Indictment). *Id.* ¶ 2. The Defendant stipulated that the foregoing conduct

would be considered by the Court pursuant to U.S.S.G. § 1B1.2(c) "as if the defendant had been convicted of additional count(s) charging these offenses." *Id.*

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.  Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II.  Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on September 7, 1994, in Brooklyn, New York. PSR ¶ 82, ECF No. 483. Defendant is the only child born to the consensual union of John Butler and Sandra Jennifer Passley. *Id.* Defendant's father resides in Kennesaw, Georgia, and is employed as the regional manager at a freight company. *Id.* Defendant's mother resides at the address of record, and is employed as a certified nurse's aide. *Id.* Defendant's parents are aware of Defendant's arrest and conviction, and they remain supportive of him. *Id.*

Defendant's mother described him as a "very loving person, gentle and helpful." *Id.* ¶ 83. The mother recalled Defendant always helped the senior citizens in their neighborhood, and he used to recruit the area children to attend Sunday services. *Id.* Defendant's mother noted Defendant was previously active in their church, and he volunteered at the program to feed the homeless. *Id.* With regard to the instant offense, Defendant's mother noted she has always worked two jobs, and she found it difficult to also look after Defendant. *Id.* She noted Defendant often "felt all alone." *Id.* Defendant's mother speculated that while she was working nights, it allowed Defendant to become involved with the "wrong crowd." *Id.* She advised Probation that the family made efforts to remove Defendant from the community by having him move to Georgia to be with his father. *Id.*

Defendant has three maternal half-siblings. *Id.* ¶ 84. Jamilla Smith resides in Brooklyn and is employed by former New York City Mayor Bloomberg. *Id.* Defendant's sister is also enlisted in the United States Army Reserves. *Id.* Camilla Smith resides in Brooklyn and is employed as a certified nurse's aide. *Id.* Kerah Bowlyn resides at the address of record and is enrolled in school. *Id.* Defendant also has six paternal half-siblings. *Id.* Lynae Jones resides in East Hartford, Connecticut, and his employment status is unknown. *Id.* Nicholas Butler is currently incarcerated in the State of Florida on drug charges. *Id.* Ashley Butler resides in

3

Georgia, and her employment status is unknown. *Id.* Sharmalee Johnson resides in North Carolina and is employed as a teacher. *Id.* Samantha Butler resides in Kennesaw and is enrolled in college. *Id.* Christina Butler resides in Kennesaw and is enrolled in school. *Id.* The siblings are aware of Defendant's arrest and conviction, and they remain supportive of him. *Id.*

Defendant was primarily raised by his mother and maternal half-siblings in a lower-income household, as his parents separated in 1996, when Defendant was age two. *Id.* ¶ 85. Defendant advised his childhood was "not good" because his mother worked two jobs, and he was unable to go outside to play. *Id.* He noted that he was not physically abused, but he would receive "harsh beatings" from his mother. *Id.* Defendant added that as the only son, "everything came down on him." *Id.* He reported that he received limited material items, as his mother could not afford them. *Id.*

Defendant advised that he was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) as a child, and he was supposed to attend counseling. *Id.* However, as his mother was not home to make him attend, Defendant rarely attended his counseling sessions. *Id.* With regard to his father, Defendant noted he was incarcerated on federal drug charges in 2000, and his father was not released from custody until 2008. *Id.* According to the Electronic Case Filing (ECF) system, Defendant's father was convicted of Conspiracy to Distribute a Controlled Substance, and he was sentenced in the District of Connecticut to five years custody and four years supervised release on February 15, 2005. *Id.* Following Defendant's accident, described *infra*, Defendant's father became more active in his life. *Id.*

In December 2011, Defendant became romantically involved with Latisha Thomas. *Id.* ¶ 86. Ms. Thomas resides in Brooklyn, is healthy, and is employed as a teacher in an after school program. *Id.* She is also enrolled in school to become a medical assistant. *Id.* One child, a

daughter, age three at the time of the presentence investigation report ("PSR"), was produced from this relationship. *Id.* The child was born with Amniotic Band Syndrome. *Id.* As a result, she was born with her middle finger missing on her right hand, and her index finger on her left hand is partially missing. *Id.* The child is also missing her big toe on her right foot, and she is missing toe nails on several toes. *Id.* She was unable to walk until she was sixteen months old. *Id.* The child has issues with her grip, and is unable to hold bigger items in her hands. *Id.* Probation reports Defendant became emotionally upset when he discussed how the child longs to attend dancing school, but she is prevented because of her toes. *Id.* Defendant advised Probation that the child does not receive disability benefits or any extra help or therapy because of her condition. *Id.*

Ms. Thomas described Defendant to Probation as "very loving, hardworking, outgoing, and caring." *Id.* ¶ 87. Ms. Thomas added that he is an "excellent father," and their daughter is his "number one priority." *Id.* She advised that Defendant financially supported herself and their child prior to his arrest, and she is currently being supported by Defendant's family. *Id.* Ms. Thomas noted she was surprised by Defendant's instant arrest, and she was unable to offer any insight as to why he became involved in this conduct. *Id.* At the time of the PSR, she advised Probation that she expected to complete her medical assistant program in January 2018, and she had already secured a job in her new profession. *Id.* Ms. Thomas expressed support for Defendant. *Id.*

Defendant attended the ninth through the eleventh grades at William E. Grady High School in Brooklyn, New York, from July 2, 2008 to November 21, 2012. *Id.* ¶ 106. The school records indicate that Defendant voluntarily withdrew from school. *Id.* The records further indicate that he had a cumulative average of 59.16%. *Id.* He was in a Regent's Diploma track,

and the records confirm that he did not have an Individualized Education Plan (IEP). *Id.* The school staff did have numerous visits and calls to Defendant's mother, encouraging her to place Defendant into counseling. *Id.* In March 2007, while in middle school, Defendant had been referred for the Children's Aid Society PINS (Person in Need of Supervision) Diversion Program for behavioral issues. *Id.* Finally, the records from Grady High School indicate that Defendant was suspended from school on various occasions for insubordination/disrupting the educational process, breaching security, trespassing, engaging in vandalism, kissing a school security agent on the cheek in an attempt to be funny, and truancy. *Id.*

Defendant had held various jobs, including working at a freight company, buying and selling clothes, maintenance, and packing and delivering groceries. *Id.* ¶¶ 109-113. However, as reflected in the PSR, his employment has been intermittent and his mother advised Probation that she financially supported Defendant any time he was unemployed. *Id.* ¶ 108.

Defendant resided in Brooklyn, New York, until 2013. *Id.* ¶ 88. At that time, Defendant relocated to Marietta, Georgia, in an attempt to get out of the negative influences surrounding him in Brooklyn. *Id.* Notably, Defendant committed the instant assault in Brooklyn, in 2014. *Id.* In addition, he was involved in the bank fraud in Brooklyn, from 2014 to mid-2015. *Id.* Defendant was residing in Brooklyn with Ms. Thomas and their child at the time. *Id.* As Ms. Thomas was unable to support herself without Defendant's assistance, she returned to her own residence in Brooklyn. *Id.*

On April 6, 2014, Defendant was shot three times in both of his arms, and in his right thigh. *Id.* ¶ 91. Defendant recalled he was walking with two friends near the address of record in Brooklyn, New York, when he heard "bickering" outside. *Id.* He was struck by three bullets from the individuals bickering, and he fainted immediately after being shot. *Id.* As a result of

6

the shooting, Defendant had two broken arms. *Id.* He was hospitalized for ten days in Kings County Hospital in Brooklyn, New York. *Id.* The records had been requested from the hospital, but as of disclosure of the PSR, a response had not been received. *Id.* Defendant underwent surgery at the hospital, and his right arm was repaired with a metal rod and screws. *Id.* With regard to the left arm, the bullet is still lodged in Defendant's arm, and he has plates and screws in his left forearm. *Id.* In addition, Defendant has a torn nerve throughout his left arm, preventing him from working out. *Id.* Furthermore, Defendant's right shoulder easily dislocates, and he is unable to lift weights with his left arm. *Id.*

On October 31, 2014, Defendant was struck by a bottle and the butt of a firearm in the back of his head. *Id.* ¶ 92. Defendant noted he was at a family party and uninvited guests struck him in the back of the head. *Id.* He advised Probation he was in a coma for seventeen days at Brookdale University Hospital Medical Center in Brooklyn, New York. *Id.* A request for medical records had been submitted to the hospital, but as of disclosure of the PSR, a response had not been received. *Id.* Defendant stated he was given seventy-two hours to live, and had to undergo emergency cranial surgery. *Id.* Defendant was hospitalized for three weeks, and he was then transferred for rehabilitation to Kingsbrook Jewish Medical Center in Brooklyn, New York. *Id.* He noted that he left the rehabilitation facility after three weeks, against medical advice. *Id.* At that time, Defendant had still not regained his memory, and he was told to be on complete bed rest, as his skull was still cracked. *Id.*

Defendant advised that he has undergone follow-up surgeries, in which they replaced part of his broken skull. *Id.* ¶ 93. Subsequent to the incident, Defendant has suffered from seizures. *Id.* Defendant noted that his speech "comes out backwards and his right arm starts to twitch,"

prior to the seizures. *Id.* Furthermore, Defendant suffers from memory loss, and he now finds it difficult to write music. *Id.* Defendant advised he had been an aspiring singer. *Id.*

The records received by Probation from Kingsbrook relate primarily to Defendant's follow-up treatment for his seizures, starting on August 25, 2017. *Id.* ¶ 94. In addition, the records indicate that Defendant has been treated for right anterior shoulder dislocation on October 17, 2016. *Id.* The doctors have recommended that Defendant undergo surgery on his shoulder, but Defendant was fearful it would lead to more problems. *Id.* In his view, Defendant is unable to get adequate physical therapy because of his current incarceration. *Id.*

According to the medical records from the MDC, Defendant has been diagnosed with a seizure disorder. *Id.* ¶ 95. Defendant was seen by the doctors at the MDC for increased pain in his right shoulder on July 12, 2016. *Id.* The doctors ordered that x-rays be taken of the shoulder, and they found that he was having "hardware" related pain. *Id.* The doctors concluded, given the history of trauma to Defendant's right shoulder region; the relatively recent complaint of positional/functional pain; and the x-ray noting the locking screw extends beyond the cortex which is where the pain is located, it would be prudent to have an orthopedic evaluation of the Defendant. *Id.*

Defendant advised Probation that he first consumed alcohol at age fourteen. *Id.* ¶ 100. In 2012, Defendant began to consume alcohol daily. *Id.* He estimated he consumed twelve ounces of "hard liquor" daily. *Id.* Defendant does not believe he had a problem with alcohol, but realized at the time of the PSR interview that his daily consumption of alcohol could have been problematic. *Id.* Defendant first smoked marijuana at age twelve, and he last smoked it prior to his instant arrest. *Id.* ¶ 101. He advised that he smoked two grams of marijuana per day, and he obtained the drug from "friends." *Id.* Defendant reported that he used liquid codeine two times

per month, prior to his instant arrest. *Id.* ¶ 102. He stated that he started using codeine to "mellow out" after he was shot in 2014. *Id.* Defendant attended the non-residential drug treatment program at Fortune Society in Brooklyn, New York, in 2012. *Id.* ¶ 103.

According to Bureau of Prisons SENTRY database, Defendant has been incarcerated at the Metropolitan Detention Center in Brooklyn, New York, since July 16, 2015. *Id.* ¶ 89. The database indicates that Defendant participated in the following educational courses: entrepreneurship; card making; SHU health; introduction to chess; parenting inside out dad; finance pre-trial; health education program; art program all units; and anger management. *Id.* In addition, Defendant obtained his high school equivalency during his custodial term. *Id.* Defendant has incurred infractions for destroying property over $100.00 and refusing to obey an order. *Id.*

The instance offense represents Defendant's third arrest and second conviction. In 2012, Defendant was arrested and subsequently convicted of criminal possession a weapon in the second degree for a loaded firearm in the New York Supreme Court in Brooklyn, New York. *Id.* ¶ 74. Defendant was seventeen at the time of his arrest and was adjudicated as a youthful offender. *Id.* On July 29, 2014, he was sentenced to five years probation. *Id.* On May 24, 2013, Defendant was arrested for driving without a license. *Id.* ¶ 80.

In this case, Defendant, a member of Eight Trey and Shoota Gang, and an associate of OGC, was involved in an aggravated assault of John Doe # 4. *Id.* ¶¶ 12-13, 34. Specifically, Defendant and others assaulted and then stabbed John Doe #4 in the torso, throat and neck. *Id.* ¶ 34. As stipulated in paragraph two of the Plea Agreement, Defendant was also involved in bank fraud through the use of fraudulent checks, causing a loss amount of more than $550,000. *Id.* ¶¶ 2-5. Defendant stipulated: i) that between January 6, 2014 and January 20, 2015, he, together

with others, conspired to defraud financial institutions, in violation of 18 U.S.C. § 1349 (as charged in Count 65 of the Superseding Indictment); ii) that between January 6, 2014 and July 18, 2014, he, together with others, defrauded Bank of America, in violation of 18 U.S.C. § 1344 (as charged in Count 66 of the Indictment); and iii) that between January 16, 2014 and July 22, 2014, he, together with others, defrauded JPMorgan Chase, in violation of 18 U.S.C. § 1344 (as charged in Count 67 of the Indictment).

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's assault of John Doe #4 resulted in serious physical injury to John Doe #4. Gov't Mem. at 3, ECF No. 578. Defendant's bank fraud crimes helped to fund unlawful gang activity. *Id.* The Court's sentence recognizes the seriousness of these offenses and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity and encourages him to sever his ties to the OGC, 8 Trey, and Shoota Gang. More generally, the Court's sentence sends a message to others that a life of crime carries a reward of punishment that outweighs any potential gains. Finally, it also considers Defendant's family and community support and his desire to be present in his daughter's life.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to one count of Assault in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(3). He faces a maximum term of imprisonment of twenty years. *See* 18 U.S.C. § 1959(a)(3). Defendant also faces: a maximum term of supervised release of three years, 18 U.S.C. § 3583(b)(2); not less than one and no more than five years of probation, 18 U.S.C. § 3561(c)(1); a maximum fine of $250,000.00, 18 U.S.C. § 3571(b)(3); restitution in the full amount of each victim's losses as determined by the Court, 18 U.S.C. §§ 3663A and 3664; and a special assessment of $100.00, 18 U.S.C. § 3013. Under the Plea Agreement, Defendant faces a forfeiture money judgment of $1,000,000.00. *See* Plea Agreement ¶¶ 7-14.

### D. The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

Guidelines § 2E1.3 applies to violations of 18 U.S.C. § 1959(a)(3) and sets a base offense level of fourteen. *See* United States Sentencing Commission, *Guidelines Manual*, § 2E1.3(a)(2) (Nov. 2016) ("USSG"). Section 2E1.3 directs the Court to apply the greater offense level of twelve or "the offense level applicable to the underlying crime or racketeering activity." Section 2A2.2 applies to crimes of aggravated assault and provides for a base level offense of fourteen.

Because a dangerous weapon was used, a four-level increase applies. USSG § 2A2.2(b)(2)(B). Because the victim sustained serious bodily injury, including stab wounds to the

11

neck and torso that required hospitalization, another five-level increase applies. USSG § 2A2.2(b)(3)(B). This bring Defendant's adjusted offense level to twenty-three for Count 64, Assault in Aid of Racketeering.

For Counts 65, 66, and 67, the stipulated to bank fraud conspiracy counts, Guidelines § 2B1.1 applies to violations of 18 U.S.C. § 1344. These counts are grouped pursuant to USSG § 3D1.2(d). Per USSG § 2B1.1(a)(1), the base offense level is seven if Defendant was convicted of an offense referenced to this guideline, and that offense of conviction has a statutory maximum term of imprisonment of twenty years or more. As Counts 65, 66, and 67 all have statutory maximums of thirty years, the base level here is seven. 18 U.S.C. §§ 1344. Because the instant offense involved a loss exceeding $550,000, fourteen levels are added. USSG § 2B1.1(b)(1)(H). This brings the adjusted total offense level to 21 for Counts 65, 66, and 67.

Under the multiple count analysis pursuant to USSG § 3D1.4, Count 64 and Counts 65-67 result in one unit for each group, for a total of two units. Taking the greater adjusted offense level of 23 and adding the two levels for the two units results in a combined adjusted offense level of 25.

Defendant has demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. USSG § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. USSG § 3E1.1(b). All parties agree Defendant should receive this three-point reduction for acceptance of responsibility.

Defendant's Plea Agreement contemplated a two-level reduction for a global resolution under USSG § 5K2.0 if: a) eighteen covered co-defendants pled guilty on or before May 17, 2017, and b) those pleas are accepted by a District Court Judge at the time of allocution or, if the

plea was taken by a Magistrate Judge, on or before May 31, 2017. Plea Agreement ¶¶ 3, 17. Not all of the eighteen covered co-defendants pled guilty by the deadlines specified in the Plea Agreement, though all defendants in this case have now pled guilty. The Plea Agreement provides the Government "may also elect not to recommend a reduction under the Guidelines for a global disposition" of the Plea Agreement. *Id.* ¶ 17. The Government has made clear it stands by a two-level reduction for global resolution. Gov't Mem. at 2.

With reductions for acceptance of responsibility and a two-level global resolution reduction, Defendant's total offense level is twenty. If a global resolution reduction were not to apply, Defendant's total offense level would be twenty-two, as contemplated in the PSR.

The parties dispute which criminal history category should apply. As discussed *supra*, Defendant began a five-year probation sentence on July 29, 2014. PSR ¶¶ 74, 76. In the plea agreement for the instant offense, Defendant stipulated and admitted that between January 6, 2014 and January 20, 2015, he, together with others, conspired to defraud financial institutions in violation of 18 U.S.C. § 1349 (Count 65 of the Indictment). Plea Agreement ¶ 2. Defendant's probation sentence for his criminal possession of a weapon in the second degree conviction began on July 29, 2014. Therefore, two points are added under USSG § 4A1.1(d) on top of the one point Defendant receives for the prior conviction under USSG §§ 4A1.1(c) and 4A1.2(e)(2). Therefore, Defendant's total criminal history score would be three, establishing a criminal history category of II. USSG Ch. 5, Part A.

However, the Plea Agreement contemplated a criminal history category of I and Defendant argues he should not be subject to the additional two points under USSG § 4A1.1(d). While Defendant acknowledges that the charged conspiracy ran through January 20, 2015, thereby overlapping with his probation sentence, he argues he did not actively participate in the

13

bank fraud conspiracy charged in Count 65 while on probation. Def. Mem. at 9. He points to the last date of the substantive bank fraud offenses charged in Counts 66 and 67 as July 18, 2014 and July 22, 2014, respectively. Plea Agreement ¶ 2; Def. Memo at 9. In the alternative, the Defense argues for a horizontal departure should the Court find Defendant's criminal history category to be II. Def. Mem. at 9-10. In support, the Defense argues that a criminal history category of II over-represents Defendant's criminal history. *Id.* at 9 (citing USSG § 4A1.3(b)(1)). The Defense also points to the fact that Defendant was adjudicated as a "youthful offender". *Id.* at 10.

The Plea Agreement states in paragraph four as follows: "The Guidelines estimate set forth in paragraph 3 is not binding on the Office, the Probation Department or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court is, for any reason, including an error in the estimate, different from the estimate, the defendant will not be entitled to withdraw the plea and the government will not be deemed to have breached this agreement." Although contemplating a criminal history category of I in the Plea Agreement, the Government now agrees with Probation that the appropriate criminal history category is II. Gov't Mem. at 2.

With a criminal history category of II and a total adjusted offense level of 20, as contemplated in the Government's sentencing memorandum, the applicable Guidelines range would be thirty-seven to forty-six months. Gov't Mem. at 2. The Government requests the Court impose a term of imprisonment at the high end of the range of thirty-seven to forty-six months. Gov't Mem. at 1.

With a criminal history category of I and a total adjusted offense level of 20, as contemplated in the Plea Agreement and Defendant's sentencing memorandum, the applicable

14

Guidelines range would be thirty-three to forty-one months. Plea Agreement ¶ 3; Def. Mem. at 10. The Defense requests the Court impose a sentence of thirty-six months—the amount of time Defendant has already served. Def. Mem. at 12.

With a criminal history category of II and a total adjusted offense level of 22, as contemplated in the PSR, the applicable Guidelines range would be forty-six to fifty-seven months. PSR ¶ 121. Probation requests the Court impose a sentence of forty-six months with two years of supervised release with special conditions. Probation Sentence Recommendation at 1, ECF No. 483-1.

The Guidelines further suggest a supervised release term of 1-3 years, USSG § 5D1.2(a)(2); that Defendant is ineligible for probation, USSG § 5B1.1, n.2; a fine in the range of $7,500 - $75,000, USSG § 5E1.2(c)(4), (h)(1); and restitution in the full amount of the victim's loss, USSG § 5E1.1(a)(1). Probation notes that based on his financial profile, Defendant appears unable to pay a fine. PSR ¶ 119.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing, beyond a global resolution reduction under USSG § 5K2.0 as discussed *supra*.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will continue to craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7). Restitution shall be awarded in the full amount of each victim's losses to be determined by the Court. 18 U.S.C. §§ 3663A and 3664

## CONCLUSION

A sentence of 46 months of incarceration, to be followed by 3 years of supervised release, restitution in the full amount of each victim's losses to be determined by the Court, a forfeiture money judgment of $1,000,000.00, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release proposed by the Probation Department.

SO ORDERED.

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 23, 2018
       Brooklyn, New York

16