UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,              :
                                       :         **DECISION & ORDER**
            v.                         :         15-CR-287-20 (WFK)
                                       :         19-CR-534 (WFK)
CORDERO PASSLEY,                       :
                                       :
            Defendant.                 :
-------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On June 10, 2021, Cordero Passley ("Defendant") pleaded guilty to being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and to violating the conditions of his supervised release by committing a crime. On December 7, 2021, the Probation Department ("Probation") filed a sealed Presentence Investigation Report ("PSR") setting forth Defendant's sentencing range. PSR, ECF No. 68, Case No. 19-CR-534; ECF No. 483, Case No. 15-CR-287-20. Before the Court is Defendant's objection to the PSR. *See* Def. Objection, ECF No. 78, Case No. 19-CR-534. For the following reasons, the Court DENIES the Defendant's objections.

## BACKGROUND

On May 19, 2017, Defendant pleaded guilty to Count Sixty-Four of the Superseding Indictment in *United States v. Artis et al.*, Case No. 15-CR-287-20, charging him with Assault in Aid of Racketeering in violation of 18 U.S.C. § 1959(a)(3), pursuant to a plea agreement. *See generally* ECF Nos. 435, 436, Case No. 15-CR-287-20. On July 23, 2018, this Court sentenced Defendant to forty-six (46) months in custody, followed by three (3) years of supervised release. *See* Judgment, ECF No. 587. Defendant commenced his term of supervision on November 19, 2018. Violation of Supervised Release ("VOSR") Report at 1, ECF No. 808, Case No. 15-CR-287-20

On October 11, 2019, Probation filed a sealed VOSR Report charging Defendant with seven violations of the conditions of his supervision. *See* VOSR Report. As set forth in the VOSR Report, the Defendant, while driving, engaged in a verbal altercation with an individual after a traffic incident. The Defendant discharged a firearm at the individual's vehicle and drove

1

away. The individual was not injured and followed the Defendant's vehicle until Defendant exited it and entered building "A" of 305 Linden Boulevard. Officers later recovered a grey Taurus 9-millimeter firearm and loaded magazine from 305 Linden Boulevard and a shell casing on the driver's side floor of Defendant's vehicle, which matched the ammunition rounds found in the firearm.

On November 13, 2019, a grand jury returned an Indictment in *United States v. Passley*, Case No. 19-CR-534, charging Defendant with being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Indictment, ECF No. 8, Case No. 19-CR-534. On December 6, 2019, Probation filed a sealed supplemental memorandum to the first VOSR report to include an eighth violation charging Defendant with violating the following condition: "[D]efendant shall not commit another federal, state, or local crime." ECF No. 830 ("VOSR Supplement").

On June 10, 2021, Defendant pleaded guilty to the sole count of the Indictment in *United States v. Passley*, Case No. 19-CR-534, and to Charge Eight of the VOSR Report in *United States v. Artis et al.*, Case No. 15-CR-287-20. On December 7, 2021, Probation filed a sealed PSR. On April 14, 2022, Defendant filed a letter objecting to portions of the PSR. *See* ECF No. 78, Case No. 19-CR-534 ("Def. Objection"). Specifically, Defendant asks the Court to hold the Government to its burden of proof by a preponderance of the evidence as to all material allegations concerning Defendant's interaction with the driver and passenger of a van on October 8, 2019, including the following allegations reflecting Defendant's intentions and mental state: (1) that Defendant attempted to cut the van off with his vehicle; (2) that Defendant threatened to kill the driver; (3) that Defendant pointed a firearm "at" the van's occupants; and (4) that the bullet discharged from the firearm was shot "at" those individuals. *Id*. Defendant objects to the

2

legal conclusion that the offense involved an assault with intent to commit murder, and objects to the further conclusion that the offense involved murder in the first degree. ECF No. 79, Case No. 19-CR-534 ("Def. Issues Ltr.").

On April 15, 2022, the Government filed a response to Defendant's objections to the PSR, arguing there is ample factual and legal support for the conclusion that Defendant intended to commit murder. ECF No. 80, Case No. 19-CR-534 ("Gov't Response"). On April 18, 2022, the Government filed an additional letter in further support of the conclusion and guidelines calculation in the PSR. ECF No. 81, Case No. 19-CR-534 ("Gov't Issues Ltr.").

On April 21, 2022, the Court held a *Fatico* hearing. The Court received the following exhibits at the hearing and in the parties' briefing: (1) the first 911 call of Lester Brown, Gov't Ex. 1; (2) the second 911 call of Mr. Brown, Gov't Ex. 2; (3) a photograph of the van driven by Mr. Brown, Gov't Ex. 4; (4) photographs of the van and bullet hole, Gov't Exs. 5–6; (5) a photograph of the metal plate behind the driver's seat in the van, Gov't Ex. 7; (6) body camera footage, Gov't Exs. 9, 11, 17, 18, 19; (7) the grand jury testimony of Mr. Brown, Gov't Ex. 13; (8) the grand jury testimony of Alfred Bonner, Gov't Ex. 14; (9) a property clerk invoice of the recovered firearm, Def. Ex. 1; (10) laboratory reports of examinations of the firearm, cartridge, and bullets, Def. Exs. 2–4; (11) the King's County State Court criminal charges, Def. Ex. 5; (12) photographs of the bullet recovered from the van's cabinet, Def. Exs. 7–11; (13) a map depicting the intersection of Rogers Avenue and Linden Boulevard in Brooklyn, New York, Def. Ex. 13; (14) a letter from a neurologist, Dr. Laurence Radin, who was retained to provide an opinion regarding medication Defendant was taking at the time of the incident, Def. Ex. 14; (15) notes of an interview with Mr. Bonner by prosecutors and law enforcement officers, Def. Ex. 17; (16) notes of an interview with Mr. Brown by prosecutors and other law enforcement officers, Def.

3

Ex. 18; (17) footage from two cameras at the intersection of Rogers Avenue and Church Avenue, Def. Ex. 20; and (18) footage from two cameras at the intersection of Clarkson Avenue and Nostrand Avenue, Def. Ex. 21.

## DISCUSSION

### I. Legal Standard

"Judges may exercise sentencing discretion through 'an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come.'" *Alleyne v. United States*, 570 U.S. 99, 116 n.6 (2013) (alteration in original) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)). "[F]acts relevant to sentencing must be found by a preponderance of the evidence." *United States v. Salazar*, 489 F.3d 555, 557 (2d Cir. 2007). "In light of this discretion, numerous courts have considered uncharged violent conduct by a defendant at sentencing in determining, *inter alia,* his 'history and characteristics' and/or the degree to which there is a need 'to protect the public from further crimes of the defendant'" pursuant to the Sentencing Guidelines. *United States v. Valerio*, No. 14-CR-94, 2017 WL 2376602, at *2 (E.D.N.Y. June 1, 2017) (Bianco, J.) (citing cases), *aff'd*, 765 F. App'x 562 (2d Cir. 2019). Where a party has made an objection to any portion of the presentence investigation report, the Court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B).

### II. The Events of October 8, 2019

The evidence and exhibits admitted at the *Fatico* hearing established the following by a preponderance. On October 8, 2019, at approximately 4:30 P.M., Defendant was driving a

4

Toyota Camry in the Flatbush neighborhood of Brooklyn, New York.  Def. Exs. 20–21.  Defendant had a traffic incident with a work van driven by Mr. Brown and in which Mr. Bonner was a passenger, wherein the driver of one vehicle impeded the entrance of the other vehicle into the lane.  Gov't Ex. 13 at 10; Gov't Ex. 14 at 5–6.  The drivers exited their respective vehicles, and engaged in a heated verbal altercation.  Gov't Ex. 13 at 10–13; Gov't Ex. 14 at 6–8; Def. Exs. 17–18.  Defendant stated to Mr. Brown and Mr. Bonner, in sum and substance, that he was going to cause one or both of them serious physical harm.  Def. Ex. 18 at 1, Gov't Ex. 13 at 10–11.[1]  After a woman with Defendant ushered him back into his car, both drivers returned to their vehicles and drove off.  Def. Exs. 17–18.  Shortly thereafter, Defendant stopped the car and the woman and a child exited the vehicle.  Gov't Ex. 13 at 13–14; Gov't Ex. 14 at 8–9.  Defendant began to follow Mr. Brown and Mr. Bonner in his car, even when Mr. Brown made a U-turn.  *Id*.  Defendant then pulled his car alongside the driver's side of the van, pointed a gun at the direction of Mr. Brown, and fired one shot toward the driver's side of the van.  *See* Gov't Ex. 13 at 14–15; Gov't Ex. 14 at 8.  The bullet entered the side of the van and struck a metal plate behind Mr. Brown's shoulder before ricocheting and coming to rest inside the van cabinet.  Gov't Exs. 4–7, 10.  Defendant then drove away.  Gov't Ex. 13 at 15; Gov't Ex. 14 at 9.

### III.   Calculation of the Applicable Guidelines Sentencing Range

The applicable Guideline for 18 U.S.C. § 922(g)(1) offenses is United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") § 2K2.1.  Pursuant to § 2K2.1(c)(1)(A), if the firearm was used in connection with the commission of another offense, U.S.S.G. § 2X1.1 applies.  Section 2X1.1 states "[w]hen an attempt, solicitation, or conspiracy is expressly covered by

---

[1] Whether Defendant actually stated he was going to "fucking kill" Mr. Brown, Gov't Ex. 13 at 10, or "I'm going to fuck you up," Gov't Ex. 9 at 16:59, 17:00, or "somebody is going to get hurt," Def. Ex. 18 at 1, it is clear from the evidence the Defendant expressed an intent to cause serious physical injury at the very least.

5

another offense guideline section, apply that guideline section." The central dispute of the parties is whether the instant offense involved an assault with intent to commit murder, therefore warranting application of Sentencing Guideline § 2A2.1. Furthermore, even should section 2A2.1 apply, the parties dispute whether the object of the offense would have constituted first degree murder, supporting a base offense level of thirty-three (33), or other attempted murder, resulting in a base offense level of twenty-seven (27). U.S.S.G. § 2A2.1(a).

U.S.S.G. § 2A2.1 defines "first degree murder" as conduct that would constitute first degree murder under 18 U.S.C. § 1111. Pursuant to 18 U.S.C. § 1111, "murder is the unlawful killing of a human being with malice aforethought." The statute defines first degree murder as "murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing." *Id.* "Premeditation can be proved by circumstantial evidence." *United States v. Cespedes*, No. 11-CR-1032, 2015 WL 4597539, at *3 (S.D.N.Y. July 30, 2015) (Engelmayer, J.) (quoting *United States v. Begay*, 673 F.3d 1038, 1043 (9th Cir. 2011)). "Relevant circumstantial evidence includes: '(1) facts about how and what the defendant did prior to the actual killing which show he was engaged in activity directed toward the killing, that is, planning activity; (2) facts about the defendant's prior relationship and conduct with the victim from which motive may be inferred; and (3) facts about the nature of the killing from which it may be inferred that the manner of killing was so particular and exacting that the defendant must have intentionally killed according to a preconceived design.'" *Cespedes*, No. 11-CR-1032, 2015 WL 4597539, at *3 (S.D.N.Y. July 30, 2015) (quoting *United States v. Blue Thunder*, 604 F.2d 550, 553 (8th Cir. 1979)). "Premeditation requires a showing that a defendant acted with 'a cool mind that is capable of reflection,' and 'did, in fact, reflect, at least for a short period of time before his act of killing.'" *United States v. Watson*, 2021 WL 2474430, at *6

6

(E.D.N.Y. June 16, 2021) (Kuntz, J.) (quoting *United States v. Shaw*, 701 F.2d 367, 393 (5th Cir. 1983), *abrogated on other grounds by Greer v. Miller*, 483 U.S. 756 (1987)). "In contrast to malice aforethought, premeditation requires that 'an appreciable time elapse between formation of the design and the [attempted] fatal act within which there is, in fact, deliberation.'" *Id*. (quoting *United States v. Delaney*, 717 F.3d 553, 556 (7th Cir. 2013); *Fisher v. United States*, 328 U.S. 463, 469 n.3 (1946)). *See also id.* at *6 (finding premeditation where Defendant had driven to the scene from a distance away following a phone call and fired multiple shots at the victim as he drove away).

"Any other murder is murder in the second degree." 18 U.S.C. § 1111. The Second Circuit has explained that "second degree murder's malice aforethought element is satisfied by: (1) intent-to-kill without the added ingredients of premeditation and deliberation; (2) intent-to-do-serious-bodily-injury; [or] (3) depraved-heart." *United States v. Regnier*, 44 F. App'x 524, 528 (2d Cir. 2002) (summary order) (quoting *United States v. Pearson*, 159 F.3d 480, 486 (10th Cir. 1998)).

The Government and Probation argue application of U.S.S.G. § 2A2.1(a)(1) is warranted, resulting in a base offense level of thirty-three (33). *See* Gov't Response at 1; PSR ¶ 15. The Defense argues U.S.S.G. § 2A2.1(a)(1) is not applicable, and the Court should instead apply Guideline § 2K2.1(a)(4)(A), for a base offense level of twenty (20), along with a four-level increase pursuant to Guideline § 2K2.1(b)(6)(B) because the defendant used or possessed the firearm in connection with "another felony offense," namely, reckless endangerment in the first degree in violation of New York Penal Law § 120.20. Def. Objection at 2. The Defense alternatively argues that even if the Court were to find there was an assault with intent to commit murder warranting application of section 2A2.1, section 2A2.1(a)(2) should apply instead of

7

section 2A2.1(a)(1) because the circumstances of the October 8, 2019 incident do not support a finding of premeditated intent by the Defendant.  Def. Issues Ltr. at 4.

      The Court finds the Government has proved by a preponderance of the evidence Defendant's actions constitute an attempt to commit first degree murder.  The attempt was "so particular and exacting that the defendant must have intentionally [attempted to kill] according to a preconceived design," *Blue Thunder*, 604 F.2d 550 at 553, and the facts indicate Defendant acted with a "cool mind." *See Shaw*, 701 F.2d 367 at 393.  Although the Defendant attempts to blame his prescribed medication at the time, with side effects including rage, emotional outbursts, psychotic symptoms, irritability, and aggressive behavior, Def. Ex. 14, the Court is not persuaded.  There was an "appreciable time" between "formation of the design and the [attempted] fatal act within which there [was], in fact, deliberation." *Delaney*, 717 F.3d 553 at 556 (quotations omitted).  The record demonstrates Defendant acted in a fit of rage and with a "cool mind."  Defendant became angry and heated during the traffic incident.  His anger was further inflamed when he yelled at the other drivers.  Demonstrating his cool, calculated actions and intent, the Defendant then discharged the woman and child from his car, followed the van, drove up to the side of the van, and deliberately discharged his gun at the driver's head. The entire encounter lasted long enough for the Defendant to engage in calm reflection, to deliberate and to step back from his premeditated attempt to murder his victim.  He failed to do so.

      Upon careful review of the evidence, the Court finds the Government has met its burden of proving by a preponderance: this Defendant acted with an intent to kill Mr. Brown sufficient to support an attempt to commit first degree murder.  The Defense argues a single shot cannot support a finding of intent to kill.  Def. Post Hr'g Brief at 6, ECF No. 1066, Case No. 15-CR-287-20.  In support, the Defense postulates a single discharge could have been "a warning shot

8

that went astray or another unintended result comparable to those that happen even when trained officers draw weapons." *Id*. The Court disagrees. Defendant fired a dangerous and deadly weapon at the head of another person, from relatively close range, as his car was pulled alongside the driver's side of the van. The bullet struck a metal plate affixed to the van just behind Mr. Brown's head, narrowly protecting him from what could have been a deadly head shot. This occurred after Defendant had threatened to kill or to "fuck up" Mr. Brown, and his actions in shooting a deadly weapon at Mr. Brown's head immediately thereafter support a finding of an attempt to commit first degree murder. These charges, which the Government has proved by a preponderance, are serious.[2] Therefore, the Court will apply Guideline § 2A2.1(a)(1) in calculating a base offense level of thirty-three (33).

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's objection to the PSR. Aaron Burr killed Alexander Hamilton with one deadly shot; John Wilkes Booth killed Abraham Lincoln with one deadly shot; James Earl Ray killed Rev. Dr. Martin Luther King, Jr. with one deadly shot. Counsel for Cordero Passley asks this Court to establish a new rule of attempted murder: requiring more than one attempted deadly shot. History says otherwise. The law says otherwise. This Court rules otherwise.

SO ORDERED.

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 9, 2022
      Brooklyn, New York

---

[2] Indeed, an attempted murder charge has been brought in federal court *absent* the firing of a single shot in *United States of America v. Nicholas John Roske*, a case involving an individual alleged to have planned to murder Justice Brett Kavanaugh. *See* Complaint at ECF No. 1, 22-MJ-1848-TJS (D.Md. June 8, 2022).

that went astray or another unintended result comparable to those that happen even when trained officers draw weapons." *Id*. The Court disagrees. Defendant fired a dangerous and deadly weapon at the head of another person, from relatively close range, as his car was pulled alongside the driver's side of the van. The bullet struck a metal plate affixed to the van just behind Mr. Brown's head, narrowly protecting him from what could have been a deadly head shot. This occurred after Defendant had threatened to kill or to "fuck up" Mr. Brown, and his actions in shooting a deadly weapon at Mr. Brown's head immediately thereafter support a finding of an attempt to commit first degree murder. These charges, which the Government has proved by a preponderance, are serious.[2] Therefore, the Court will apply Guideline § 2A2.1(a)(1) in calculating a base offense level of thirty-three (33).

## CONCLUSION

For the foregoing reasons, the Court DENIES the Defendant's objection to the PSR. Aaron Burr killed Alexander Hamilton with one deadly shot; John Wilkes Booth killed Abraham Lincoln with one deadly shot; James Earl Ray killed Rev. Dr. Martin Luther King, Jr. with one deadly shot. Counsel for Cordero Passley asks this Court to establish a new rule of attempted murder: requiring more than one attempted deadly shot. History says otherwise. The law says otherwise. This Court rules otherwise.

SO ORDERED.

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 9, 2022
    Brooklyn, New York

---

[2] Indeed, an attempted murder charge has been brought in federal court *absent* the firing of a single shot in *United States of America v. Nicholas John Roske*, a case involving an individual alleged to have planned to murder Justice Brett Kavanaugh. *See* Complaint at ECF No. 1, 22-MJ-1848-TJS (D.Md. June 8, 2022).